UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC B. GREGORY, SR,

        Petitioner,

vs.                                 Case No. 3:20-cv-426-BJD-PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

### **I.  STATUS**

Petitioner Eric B. Gregory, Sr., is proceeding on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) challenging his Duval County conviction for trafficking in morphine, opium, oxycodone, heroin, hydrocodone or their derivatives (counts one and two), sale, manufacture, deliver cocaine within 1000 feet of a church (counts three and four), and sale of controlled substance within 1000 feet of church or convenience business (counts five and six).  Respondents filed a Response to Petition for Writ of Habeas Corpus (Response) (Doc. 8) with an Appendix.[1]  Petitioner filed a Reply to Respondents' Response (Reply) (Doc. 9).

---

[1] The Court references the docket and page numbers assigned by the electronic filing system for the Petition, Response, Reply and FDC Appendix Exhibits (Ex.) (Doc. 8).

## II.  HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021). For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district court must employ a very deferential framework.   Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable

2

determination of the facts in light of the evidence presented in the State court proceeding.'" <u>McKiver v. Sec'y, Fla. Dep't of Corr.</u>, 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), <u>cert. denied</u>, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   <u>McKiver</u>, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam)

(quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). [2] Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576

---

[2] The Court finds the reasoning of Brannan persuasive on this point.   See McNamara v. Gov't Emp. Ins. Co., 30 F.4th 1055, 1060-61 (11th Cir. 2022) (reiterating that unpublished opinions may be cited as persuasive authority but are not binding precedent.   See Rule 32.1, Fed. R. App. P.   The Court references other unpublished decisions in this opinion, recognizing that these decisions constitute persuasive authority, not binding precedent.

U.S. 305, 314 (2015)), <u>cert. denied</u>, 142 S. Ct. 124 (2021).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   <u>Id</u>. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

The two-part <u>Strickland</u> standard governs claims of ineffective assistance of counsel.[3]   <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 2471 (2021).   See <u>Freeman v. Comm'r, Ala. Dep't of Corr.</u>, 46 F.4th 1193, 1220 (11th Cir. 2022) ("In an ineffective assistance of counsel claim, § 22543(d)'s terms are judged by the standard set forth in <u>Strickland v. Washington</u>.").   Pursuant to this standard, a defendant

---

3 <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

must show: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. A district court need not address both prongs if a petitioner makes an insufficient showing on one. Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam) (relying on Strickland), cert. denied, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687), cert. denied, 142 S. Ct. 1234 (2022). Additionally, combining the deferential standard for judging the performance of counsel with the extra layer of deference that § 2254 provides, the resulting double deference "is doubly difficult for a petitioner to overcome[.]" Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (2011).

"And to determine whether [Petitioner] is entitled to habeas relief[,]" this Court "must ask (1) whether the [state court] decisions were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined' in Strickland, or (2) whether the . . . decisions were based on an

6

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Whatley v. Warden, Ga. Diagnostic & Classification Ctr., 927 F.3d 1150, 1175 (11th Cir. 2019) (citations and internal quotation marks omitted), cert. denied, 141 S. Ct. 1299 (2021). This Court must be ever mindful that a state court's decision must be given deference and latitude and therefore the AEDPA standard is, as a consequence, quite difficult to meet.

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, a defendant's solemn declarations in open court carry a strong presumption of

7

verity. Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible based on the record.

Petitioner also raises claims of ineffective assistance of appellate counsel. A claim of ineffective assistance of appellate counsel is governed by this same Strickland standard. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam), cert. denied, 559 U.S. 1010 (2010). As in a claim of ineffective assistance of trial counsel, failure to establish either prong of the Strickland standard is fatal to a claim of ineffective assistance of appellate counsel. Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

In applying the two-pronged standard established in Strickland, the Court is mindful that appellate counsel may weed out weaker, although meritorious arguments, as there is no duty under the Sixth Amendment to raise every non-frivolous issue. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). Regarding the prejudice prong, "[a]ppellate [c]ounsel's performance will be deemed prejudicial if we find that the neglected claim would have a reasonable probability of success on appeal." Tuomi, 980 F.3d at 795 (quoting Philmore, 575 F.3d at 1265) (internal quotation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

Overstreet, 811 F.3d at 1287 (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000) quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

## IV.   GROUNDS

In his Petition, Petitioner raises four grounds: (1) the ineffective assistance of trial counsel for failure to review the prosecution's discovery and present a plausible argument at sentencing; (2) the ineffective assistance of trial counsel for advising Petitioner to enter an open plea to the court ; (3) the ineffective assistance of counsel for stipulating that a factual basis existed as to counts three and four of the information; and (4) the ineffective assistance of appellate counsel for failure to raise the issue of the sentencing court's denial of Petitioner's motion for downward departure on direct appeal.   Petition at 6, 15, 19, 22.

Upon review, the Court concludes no evidentiary proceedings are required in this Court.   The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess these four claims without any further factual development. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## A.   Ground One

Petitioner exhausted ground one (the ineffective assistance of trial counsel for failure to review the prosecution's discovery and present a plausible argument at sentencing) of the Petition by raising it in claim one of his amended Rule 3.850.   Ex. 7 (Doc. 8-7 at 40-48).   The state responded, relying upon the two-pronged <u>Strickland</u> standard of review.   Ex. 9 (Doc. 8-9).   The circuit court denied the post-conviction motion.   Ex. 10 (Doc. 8-10). Petitioner appealed the trial court's decision to the First District Court of Appeal (1st DCA).   Ex. 23 (Doc. 8-23).   On January 25, 2019, the 1st DCA per curiam affirmed the decision of the trial court.   Ex. 24 (Doc. 8-24).   The mandate issued on February 22, 2019.   Ex. 25 (Doc. 8-25).

Apparently the state court applied the two-pronged <u>Strickland</u> standard of review referenced in the state's response.   Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1).   The Court's next considers whether the state court unreasonably applied that principle to the facts or premised its adjudication of the claim on an unreasonable determination of the facts.

This Court will give some procedural history to provide context for the claim.   The record demonstrates that prior to trial, Petitioner's counsel, Carlton "Duke" Fagan, filed a Motion for Downward Departure From

Sentencing Guidelines on Petitioner's behalf.   Ex. 14 (Doc. 8-14 at 105-10). He argued that the actions of law enforcement constituted sentence manipulation.   Id. at 108.   In support, counsel relied on State v. Steadman, 827 So. 2d 1022 (Fla. 3d DCA 2002), noting that although a defendant does not have a right to be immediately arrested to prevent the commission of further crimes, the court may, in its discretion, impose a downward departure sentence when law enforcement allows a defendant to continue to conduct criminal activities for no other reasons than to enhance his sentence.   As outlined in Steadman, the paramount question for a court's consideration is whether there were legitimate law enforcement reasons to support the police conduct, like the extent of the criminal enterprise, to establish the defendant's guilt beyond a reasonable doubt, or to uncover any co-conspirators.   Id. at 1025.

Mr. Fagan noted that the law enforcement officers, over the course of three days, November 5, 2011, November 6, 2011, and November 15, 2011, made repeated purchases of controlled substances from Petitioner until they finally arrested him on the 15th.   (Doc. 8-14 at 108-109).   Counsel submitted these repeated buys served no legitimate law enforcement purpose and there was probable cause to arrest Petitioner on November 5, 2011, after the first buy.

At the hearing on the motion for downward departure, Mr. Fagan called two witnesses:   Detective Troy Yorton and Detective George Simpson, undercover narcotics detectives.   Ex. 4 (Doc. 8-4 at 30).   Detective Simpson attested he made the first buy, crack cocaine, on November 5, 2011.   Id. at 35-36.   He said he knew a felony had been committed and he had probable cause to arrest Petitioner.   Id. at 36-37.   Detective Simpson attested that Detective Yorton also asked to buy crack cocaine, and did so.   Id. at 37-38.   Afterwards, both officers walked away.   Id. at 38.   They were conducting additional "buy walks" on November 6, 2011 and purchased Lortab pills from Petitioner.   Id. at 38-39.

When counsel asked if there was a larger plan to go after the supplier, Detective Simpson responded, "[t]hat's always the plan with anybody that we buy drugs from."   Id. at 42.   Detective Simpson attested that he did not know Petitioner's identity when he made the first buy from Petitioner.   Id. at 43. Detective Simpson testified Petitioner initiated the Lortab transaction by running across the street and flagging the detectives down.   Id.   Detective Simpson described the purpose of buy walks: "[t]o identify them, to try to find different leads to lead to somebody else, from him without his knowledge or partners on that level."   Id. at 43-44.   He explained that they were looking for identities and associates in an attempt to find out the supplier of the drugs.

Id. at 44.   As for the decision of arresting Petitioner after the last buy, he testified, "[w]e were getting nowhere as far as finding someone else connected to him, or where he was getting it from."   Id.

Detective Yorton testified similarly.   Id. at 49-59.   When asked if the officers could have had Petitioner arrested after the four drug transactions, Detective Yorton responded: "[i]f that's where we wanted to conclude our investigation of the defendant, yes, sir."   Id. at 59.   Detective Yorton said they wanted to find out Petitioner's identify and who was supplying him with drugs. Id. at 60.   Mr. Fagan inquired, "[a]nd there was no named, for lack of a better term, the king pin or supplier that you were focused on trying to find, was there?"   Id. at 64.   Detective Yorton responded no, not specifically.   Id.   He said, "[t]hat's what we were going in with."   Id.   Then Mr. Fagan asked, "[w]ell that's always the plan though, isn't it, is to try to get more information to go up?"   Id.   Detective Yorton responded affirmatively.   Id.   Detective Yorton described an active investigation into Petitioner initiated with the first buy and continued until the last buy.   Id. at 65.   Detective Yorton attested the officers leave the person on the streets to facilitate the investigation as they are hoping to obtain the identity of the seller and the supplier and ultimately find the supply line.   Id. at 65-66.

Mr. Fagan made argument, contending that the officers' actions did not protect and serve the public, they merely manipulated the sentence.   <u>Id</u>. at 67-70.   The state presented argument, claiming there were a number of legitimate law enforcement reasons to support leaving Petitioner on the streets, including attempting to strengthen the case for conviction.   <u>Id</u>. at 72-74.   Mr. Fagan gave his final argument.   <u>Id</u>. at 74-75.

The court made its ruling, finding that although the police could have used other means to accomplish their purpose, "they chose to continue to buy from the defendant, to pursue legitimate police ends, identifying the defendant, **or finding who his supplier is, is a legitimate police end**." <u>Id</u>. at 76 (emphasis added).   The court concluded that the officers' behavior was consistent with their stated goal, "**to strengthen their case**, in that as soon as they found, according to the testimony, that the defendant was not providing them with any more information that was useful in their investigation, they did shut their investigation down, by arresting the defendant" on the third encounter.   <u>Id</u>. at 76-77 (emphasis added).   The court denied the motion for downward departure.   <u>Id</u>. at 77.

Petitioner contends that Mr. Fagan should have done more to prepare for the hearing.   Petitioner submits that had counsel discovered and revealed to the court that the officers knew Petitioner's name after the first encounter,

counsel could have rebutted the detectives' testimony at the sentencing hearing.   In particular, Petitioner argues that had Mr. Fagan obtained and reviewed certain discovery materials he would have learned that on November 5, 2011, both detectives listed Petitioner's name on the P-1611 forms.   Ex. 7 (Doc. 8-7 at 37); Ex. 11 (Doc. 8-11 at 58).   In this regard, Petitioner surmises that the detectives filled out the name of the suspect on the P-1611 forms on November 5, 2011, and not on the date that the forms were delivered to the property room at the end of the operation.   See Ex. 11 (Doc. 8-11 at 64) (17/04.01 Narcotics/Vice Operations F.2. "Form P-1611 shall remain in the custody of buy car officers and shall be delivered to the property room at the end of the operation.").

As noted by Respondents, counsel did argue sentence manipulation.   He did not perform deficiently in this regard.   Indeed, he performed well with the boundaries of professional standards.   Even assuming the officers discovered Petitioner's identity on November 5, 2011 and recorded that information on that date on some police property forms, the court found the officers were pursuing other legitimate police ends by continuing their investigation, including trying to find the supplier and strengthen their case.   Thus, even if counsel had reviewed and introduced the P-1611 forms, the court found other legitimate reasons that led the police to continue their investigation.

Moreover, a downward departure is a discretionary decision of the trial court.   The state had filed a Notice of Intent to Classify Defendant as an Habitual Felony Offender.   Ex. 14 (Doc. 8-14 at 37).   The Criminal Punishment Code Scoresheet reflects that Petitioner had four prior felony convictions.   Ex. 5 (Doc. 8-5 at 14-15).   Ultimately, the state did not seek a habitual felony offender sentence but asked for a sentence of thirty years.   Ex. 4 (Doc. 8-4 at 24, 108).[4]   The court sentenced Petitioner to twenty years in prison, a sentence very close to the lowest permissible prison sentence under the guidelines range.   Id. at 110-11; Ex. 5 (Doc. 8-5 at 15) (230.55 months). Petitioner was facing significant time at sentencing.

The threshold standard of Strickland has not been met.   Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1).   This Court must ask whether the court unreasonably applied that principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts.   This Court is not convinced that there was an unreasonable application or an unreasonable determination of the facts.

The trial court was objectively reasonable in its Strickland inquiry in denying Petitioner's claim of ineffective assistance of trial counsel.   The 1st

---

[4] Apparently, the state made an offer of twenty-five years pre-trial that Petitioner rejected. Ex. 7 (Doc. 8-7 at 64).

DCA affirmed.   Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that the state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, he has failed to demonstrate a Sixth Amendment violation under the Constitution.   The Court finds Petitioner is not entitled to habeas relief on ground one of the Petition.

### B.   Ground Two

Petitioner exhausted ground two (the ineffective assistance of trial counsel for advising Petitioner to enter an open plea to the court) of the Petition by raising it in claims two and four of his amended Rule 3.850 motion.   Ex. 7 (Doc. 8-7 at 11-15, 26-28).   The state responded relying on the <u>Strickland</u> standard of review.   Ex. 9 (Doc. 8-9).   The circuit court denied post-conviction relief.   Ex. 10 (Doc. 8-10).   Petitioner appealed.   Ex. 23 (Doc. 8-23).   The 1st DCA affirmed.   Ex. 24 (Doc. 8-24).

The standards set forth in <u>Strickland</u> and <u>Hill</u> are applicable as Petitioner entered a plea.   Upon review, Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1).   Next, the Court's considers whether the state court unreasonably applied that principle to the facts or

premised its adjudication of the claim on an unreasonable determination of the facts.

The record demonstrates the following. At the inception of the plea process, Mr. Fagan apparently misspoke on one occasion and referred to <u>Alfred v. State</u> rather than <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970) when notifying the court that Petitioner desired to enter a plea of guilty in his best interest. Ex. 4 (Doc. 8-4 at 6). The Plea of Guilty form signed by Petitioner and his counsel states Petitioner was entered his plea of guilty because "it is in my best interest." <u>Id</u>. at 2. In pertinent part, the plea form reads:

> I consider this plea to be to my advantage, and I have freely and voluntarily entered my plea of guilty. **I have not been offered any hope of reward, better treatment, or certain type of sentence to get me to enter this plea. I have not been promised by anyone, including my attorney, that I would actually serve any certain amount of time, and I understand that any early release of any sort is not a part of this plea agreement and is entirely within the discretion of governmental agencies other than this Court.** I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea.

<u>Id</u>. (emphasis added).

Petitioner was sworn in and the court conducted a thorough colloquy. <u>Id</u>. at 7. The court went over each count and the maximum penalty for each

count with Petitioner.  <u>Id</u>. at 7-8.  The court advised Petitioner of the rights he was giving up by pleading guilty.  <u>Id</u>. at 12-13.  Petitioner told the court no one had threatened him, coerced him, or promised anything to get him to plead guilty.  <u>Id</u>. at 13.  Petitioner said he was not under the influence of drugs, alcohol, or medication.  <u>Id</u>.  Petitioner testified he has a GED and can read and write the English language.  <u>Id</u>.  He assured the court that he had read the plea form with his lawyer, and Petitioner understood its content.  <u>Id</u>. at 13-14.  Petitioner confirmed that he entered his plea believing it to be in his best interest.  <u>Id</u>. at 14.  Mr. Fagan told the court he had reviewed the affidavit with his client and was prepared to stipulate to a factual basis for a plea to all counts.  <u>Id</u>. at 14-15.  Upon this assurance, the court found a factual basis for the plea.  <u>Id</u>. at 15.

The court asked Petitioner if he was entering a plea of guilty as to each count.  <u>Id</u>. at 15-17.  Petitioner responded affirmatively as to each count.  <u>Id</u>. Thereafter, the court accepted the plea, finding it to be freely and voluntarily entered with the full understanding of their nature and consequence.  <u>Id</u>. at 17.

Petitioner faces the formidable barrier of his sworn testimony and representation at the plea hearing and the written statements in the signed plea form.  His solemn declarations are not taken lightly and carry a strong

presumption of verity.   Petitioner's contentions to the contrary are wholly incredible in view of the record.   Also, his attempt to go behind his previously sworn testimony is not well received.

During the plea colloquy the court made certain Petitioner was aware of the charges he faced and the maximum penalty for each count.   After hearing the court's admonishments and maximum exposure, Petitioner remained determined to plead guilty in hopes that the court would consider a downward departure.   Although the court was not as lenient as Petitioner hoped the court would be, Petitioner received a low-end guideline sentence of twenty years although the state asked for thirty years at sentencing.

The seminal case of <u>Hill v. Lockhart</u> is the guiding source of applicable Supreme Court law along with <u>Strickland</u> regarding a challenge to the voluntariness of a guilty plea.   Petitioner has not satisfied the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court soundly rejected Petitioner's claim.   <u>See</u> <u>Strickland</u> and <u>Hill</u>.   Furthermore, Petitioner has failed to show that the state court unreasonably applied <u>Strickland</u> and <u>Hill</u> or unreasonably determined the facts.   Notably, in its Order Denying Defendant's Motion for Postconviction Relief, the court stated it had reviewed the motion and the court file and considered the circumstances related to the motion and upon reviewing the record found it refutes Petitioner's entitlement to relief.   Ex. 10 (Doc. 8-10

20

at 2).    Upon due consideration, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the circuit court's decision.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.    The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u> or based on an unreasonable determination of the facts. As such, Petitioner is not entitled to habeas relief on ground two of the Petition.

## C.   Ground Three

Petitioner exhausted ground three (the ineffective assistance of counsel for stipulating that a factual basis existed as to counts three and four of the information) of the Petition by raising it in claim five of his amended Rule 3.850 motion.   Ex. 7 (Doc. 8-7 at 67-69).   The circuit court denied the motion.   Ex. 10 (Doc. 8-10).   Petitioner appealed.   Ex. 23 (Doc. 8-23).   The 1st DCA affirmed.   Ex. 24 (Doc. 8-24).

The record demonstrates that Petitioner was charged in the information with two counts of sale, manufacture, deliver cocaine within 1000 feet of a church on November 5, 2011 (counts three and four).   Ex. 3 (Doc. 8-3 at 2).

The Arrest Report contains the following from reporting officer Simpson, in pertinent part:

> On 11/05/2011, Detective G. Simpson #67180 purchased crack cocaine (FTP) from the suspect for $20 (JSO Funds) at the 600 block of A. Phillip Randolph Blvd. near the Holy Temple Church (704 Lafayette St). This transaction was video and audio recorded. (CCR# 2011-883459).
>
> . . . .
>
> On 11/05/2011, Detective T. Yorton #64405 purchased crack cocaine (FTP) from the suspect for $20 (JSO Funds) at the 600 block of A. Phillip Randolph Blvd. near the Holy Temple Church (704 Lafayette St). This transaction was video and audio recorded. (CCR# 2011-883461).

Ex. 2 (Doc. 8-2 at 4-5).

On the record, counsel stipulated there was a factual basis for the plea. Ex. 4 (Doc. 8-4 at 14-15). At sentencing, Petitioner pled guilty, admitting that he "did those things" and accepted responsibility for what he did. Id. at 81-82. There were video and audio recordings of the transactions and two officers who could testify as to the transactions themselves. As noted by the state in its response to the Rule 3.850 motion, "[t]here is strong evidence of the defendant's guilt by way of the arresting officers and by his own admission at the sentencing hearing." Ex. 9 (Doc. 8-9 at 10).

The circuit court rejected Petitioner's claim of ineffective assistance of counsel based on the record refuting Petitioner's claim of entitlement to relief. Ex. 10 (Doc. 8-10 at 2).   The 1st DCA affirmed.   Ex. 24 (Doc. 8-24).

The Court finds the state court's determination is consistent with federal precedent.   The circuit court found no entitlement to relief on Petitioner's claim of ineffective assistance of counsel.   The 1st DCA's decision affirming this decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Thus, the state court's adjudication of the claim is not contrary to nor an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground three is denied.

### D.   Ground Four

In his final ground, Petitioner raises a claim of ineffective assistance of appellate counsel for failure to raise the issue of the sentencing court's denial of Petitioner's motion for downward departure on direct appeal.   The record shows Petitioner's appellate counsel filed an <u>Anders</u> brief.[5]   Ex. 15 (Doc. 8-15).

---

5 <u>Anders v. California</u>, 386 U.S. 738 (1967).

Petitioner filed a pro se brief raising the underlying issue of the state court's denial of downward departure.   Ex. 16 (Doc. 8-16) (trial court abused its discretion and denied motion for a downward departure from sentencing guidelines, violating due process).   The 1st DCA per curiam affirmed.   Ex. 17 (Doc. 8-17).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."   Martinez v. Ryan, 566 U.S. 1, 10 (2012) (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934

24

(1999).   If cause is established, a petitioner must demonstrate prejudice.   To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

Petitioner did not fairly present his claim of ineffective assistance of appellate counsel to the state courts.   Any further attempts to seek post-conviction relief in the state courts on this ground of ineffective assistance of appellate counsel would be unavailing.

Petitioner concedes that he did not exhaust his claim of ineffective assistance of appellate counsel but argues that this procedural bar should be excused pursuant to Martinez.   Petition at 24.   Martinez is inapplicable to this situation and does not provide satisfactory cause for the default. Martinez, 566 U.S. at 16 ("it does not extend to attorney errors in any

proceeding beyond that first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial").   As <u>Martinez</u> has limited scope it is simply inapplicable to Petitioner's cause.   <u>See</u> <u>Capocci v. Stewart</u>, No. 16-0507-WS-M, 2017 WL 373452, at *4 n.5 (S.D. Ala. Jan. 25, 2017) (not reported in F. Supp.) (recognizing that federal courts decline to extend <u>Martinez</u> to procedural default of ineffective assistance of appellate counsel claims as the <u>Martinez</u> decision is narrow).   Indeed, <u>Martinez</u> provides a narrow, equitable, non-constitutional exception.   As such, Petitioner's procedural default is not excused.

As Petitioner is procedurally barred from raising ground four, he must demonstrate cause and prejudice.   In his Reply, Petitioner claims he failed to raise his claim of ineffective assistance of appellate counsel due to his own lack of legal knowledge and skills.   Reply at 37.   Petitioner has not pointed to any external impediment that prevented him from raising this claim.   <u>Ward v. Hall</u>, 592 F.3d 1144, 1176-77 (11th Cir.), <u>cert. denied</u>, 562 U.S. 1082 (2010) (finding interference by state officials that impeded the raising of a claim). Indeed, Petitioner raised the underlying claim on direct appeal in his pro se brief.   Therefore, he was aware of the claim and the fact that his appellate counsel had not raised the underlying claim in the <u>Anders</u> brief.   Petitioner has pointed to no external impediment that prevented his raising a claim of

ineffective assistance of appellate counsel in the state courts.   Petitioner has failed to show cause and prejudice.

Petitioner contends that it is necessary for the Court to consider his claim of ineffective assistance of appellate counsel to prevent manifest injustice.   The Court is not convinced.   Petitioner presented his claim that the trial court abused its discretion when it denied the motion for a downward departure from sentencing guidelines violating due process to the 1st DCA. The 1st DCA affirmed.   Petitioner has failed to show that failure to address ground four, the claim of ineffective assistance of appellate counsel for failure to raise the issue of denial of downward departure would result in a fundamental miscarriage of justice.   This is not an extraordinary case as Petitioner has not made a showing of actual innocence.

The Court finds ground four procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable.   Petitioner's procedural default bars this Court's review of ground four.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[6]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of March, 2023.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/27
c:
Eric B. Gregory, Sr.
Counsel of Record

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.